# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ERIC C. DAVIS                                          CIVIL ACTION

VERSUS                                                 NO. 16-4481

STATE OF LOUISIANA                                     SECTION "B"(4)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.   Factual Background

The petitioner, Eric C. Davis ("Davis"), is a convicted inmate incarcerated in the Concordia Parish Work Release Program in Vidalia, Louisiana.[2]  On November 12, 2010, Davis was charged by Bill of Information in Jefferson Parish with a fourth or more drunk driving offense after having had five prior convictions for drunk driving.[3]  He entered a plea of not guilty to the charge on November 15, 2010.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 11/12/10.

[4]St. Rec. Vol. 1 of 5, Minute Entry, 11/15/10.

The record reflects that, on October 25, 2010 at approximately 5:00 p.m., Roy Moore was driving his Ford Explorer westbound towards Kenner in the left lane of West Napoleon Avenue in Metairie, Louisiana.[5]  Moore was the last car in a line of traffic at the intersection of West Napoleon and Clearview Boulevard, and there was an SUV in the right lane next to him.  Moore saw a dark Nissan pickup truck coming up in the right lane and it moved over to the left lane behind his vehicle.  It appeared to Moore that the truck was heading into the rear of his car, and he expected to be hit from behind.  Instead, the truck suddenly shifted to the right and drove between his vehicle and the SUV to his right, straddling the center line, and sideswiped Moore's Explorer in the process.

The pickup truck then collided with the rear of a Toyota RAV4, driven by Martha Meyers, that was located directly in front of Moore's Explorer, causing the hood of the pickup truck to pop-up.  The driver of the pickup truck, later identified as Davis, got out of the truck and "slammed" the hood back down.  Noticing that his windshield wipers were on, Davis removed the driver's side wiper and threw it into the grass.

By this time, the traffic on West Napoleon in front of the RAV4 had moved ahead.  Davis instructed everyone who had gathered at the scene to get out of his way, and he got back into his truck, drove around the RAV4, struck the left guardrail along the canal side of the street, and entered the U-turn lane up.  As he drove past, Meyers wrote down the license plate on Davis's truck.  The truck engine was smoking heavily as Davis entered the U-turn lane but he completed the turn and proceeded in the opposite direction (eastbound) on West Napoleon.

---

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Davis*, 128 So.3d 1195, 1196-1200 (La. App. 5th Cir. 2013); St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 13-KA-213, 10/30/13.

Deputy Brent Remondet of the Jefferson Parish Sheriff's Office was driving eastbound on West Napoleon in his police unit when he saw a black pickup truck emitting smoke with its hood raised up against the top of the truck and had a flat left front tire.  The truck was proceeding slowly eastbound in the left lane (canal side) of West Napoleon.  Deputy Remondet activated his lights, approached the truck, and identified himself as a Jefferson Parish Sheriff's Deputy.  He notified dispatch to send a DWI officer to his location.

Deputy Remondet found that the driver, Davis, was sluggish, his eyes were red, and his words were very slurred.  When Deputy Anthony Cannatella arrived to assist, he determined that Davis's truck had been involved in the earlier hit-and-run accident.  Davis also was complaining of neck, back, and stomach pain, which he said he received because "an old lady ran him off the road."  The Deputy did not conduct a field sobriety test on Davis because of his claimed injuries.

However, due to his slurred speech, Deputy Cannatella questioned Davis about any medical conditions and medication he was taking, and Davis advised him that he had taken one or two Alprazolam[6] pills that day.  Deputy Cannatella did not smell anything on Davis's breath, but noted that Davis was stumbling so badly that he almost went into the right lane of traffic on West Napoleon.

Davis was sent by ambulance to East Jefferson General Hospital.  Davis at one point told the ambulance EMT that he had ingested Alprazolam.  Davis also later told the emergency room physician, Dr. Granville Morse, III, that he had taken Alprazolam.

When Deputy Cannatella arrived at the hospital, he gave Davis the standard DWI rights of arrestee forms.  Davis signed the forms but refused to consent to having his blood drawn for a

---

[6]Alprazolam is the generic name for Xanax, which is used to treat anxiety and panic disorders.  It belongs to a class of medications called benzodiazepines which act on the brain and central nervous system to produce a calming effect.  http://www.webmd.com/.

chemical blood test.  The Deputy had difficulty speaking with Davis at the hospital because Davis appeared to be falling asleep.

At the hospital, Davis was in possession of a prescription bottle for Alprazolam.  The prescription was made out to Davis and had been filled earlier that day with forty pills dispensed. The bottle, however, only contained twenty-one pills.  Davis stated that he may have spilled some in the truck, although none had been seen by the deputy.  Because he voluntarily admitted that he had taken Alprazolam, Dr. Morse ordered laboratory tests on the blood and urine samples taken from Davis to rule other causes for his slurring and unsteadiness.  Dr. Morse diagnosed Davis with "acute benzodiazepine intoxication" and neck strain.  In spite of his condition, Davis asked the doctor for a sedative, and Dr. Morse denied the request.

Davis waived his right to a jury trial and was tried before a judge on January 24, 2013.[7] The state trial court found him guilty as charged.  The Court sentenced him on January 31, 2013, to serve 15 years in prison without benefit of parole, probation, or suspension of sentence.[8]  The Court later denied Davis's motion to reconsider the sentence.[9]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Davis's retained counsel asserted that the evidence was insufficient to support the verdict where the evidence did not prove his intoxication, the doctor's diagnosis was unreliable, and the prescription label provided him with a defense where he was not adequately warned not to combine the medicine with alcohol.[10] On October 30, 2013, the Louisiana Fifth Circuit affirmed the conviction and sentences finding no

---

[7]St. Rec. Vol. 1 of 5, Trial Minutes, 1/24/13; Trial Court Order, 4/1/11; Motion for Judge Trial, 4/1/11; St. Rec. Vol. 3 of 5, Trial Transcript, 1/24/13; St. Rec. Vol. 4 of 5, Transcript of Closing Arguments, 1/24/13.

[8]St. Rec. Vol. 3 of 5, Sentencing Minutes, 2/21/13; St. Rec. Vol. 4 of 5, Sentencing Transcript, 2/21/13.

[9]St. Rec. Vol. 3 of 5, Minute Entry, 4/25/13; Motion to Reconsider Sentence, 2/21/13.

[10]St. Rec. Vol. 3 of 5, Appeal Brief, 13-KA-313, 5/6/13; Reply Brief, 13-KA-313, 7/29/13.

merit in the issue raised.[11]  The Court also found on its errors patent review that the state trial court had failed to impose the mandatory fine of $5,000 and declined to do so itself.

On May 16, 2014, the Louisiana Supreme Court denied without stated reasons the related writ application filed by Davis's counsel.[12]  Davis's conviction was final under federal law ninety (90) days later, on August 14, 2014, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

While review was pending, on June 16, 2014, Davis signed and submitted an application for post-conviction relief to the state trial court asserting the following grounds:[13] (1) his conviction was obtained following an illegal search and seizure; (2) he was denied compulsory process to have rebuttal witnesses to contradict the medical transcripts; (3) his confession at the hospital was coerced; (4) he was denied equal protection and due process where his statements to medical personnel were used against him; (5) the state trial court erred in using his past character to find that he acted in conformity therewith; (6) he was denied effective assistance of counsel; (7) improper testimony on the medical examination; and (8) the prosecution withheld favorable evidence by failing to produce medical records to show he was not intoxicated.

---

[11]*Davis*, 128 So.3d at 1195; St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 13-KA-213, 10/30/13.

[12]*State v. Davis*, 139 So.3d 1023 (La. 2013); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2013-K-2748, 5/16/14; La. S. Ct Writ Application, 13-K-2748, 13-K-2748, 11/26/13; St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2013-K-2748, 11/26/13.

[13]St. Rec. Vol. 1 of 5, Application for Post-Conviction Relief, 6/18/14 (dated 6/16/14); Supplemental Memorandum, 7/2/14.

After receiving a reply from the State,[14] the Trial Court denied Davis's application on September 9, 2014.[15]  The Court found that claims one through five, seven, and eight were barred from post-conviction review under La. Code Crim. P. art. 930.4(C) because the claims could have been and were not raised on direct appeal.  The Court also found no merit in the sixth claim asserting ineffective assistance of counsel under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and related state case law.

The Louisiana Fifth Circuit denied Davis's related writ application on November 12, 2014, finding no error in the Trial Court's ruling.[16]  The Louisiana Supreme Court denied Davis's subsequent writ application without stated reasons on October 2, 2015.[17]

## II.   **Federal Habeas Petition**

On May 9, 2016, Davis through counsel filed a petition for federal habeas corpus relief in which he asserts that the evidence was insufficient to support the verdict.[18]  In support of the claim, Davis argues that the verdict is unsupported in light of the evidence that was not presented at trial, such as the details of Davis's actual prescription and doses, the chain of custody of the bottle of pills, and the fact that the pills were never tested to determine if they were Alprazolam.  In addition,

---

[14]St. Rec. Vol. 1 of 5, Trial Court Order, 7/28/14; State's Response, 8/27/14; St. Rec. Vol. 2 of 5, State's Response (continued), 8/27/14.

[15]St. Rec. Vol. 2 of 5, Trial Court Order, 9/9/14.

[16]St. Rec. Vol. 2 of 5, 5th Cir. Order, 11/12/14.  Davis submitted a writ application to the Louisiana Fifth Circuit while his post-conviction application was pending before the Trial Court.  *See*, St. Rec. Vol. 5 of 5, 5th Cir. Writ Application, 14-KH-678, 9/8/14 (dated 9/6/14).  The Court dismissed the application as premature on October 21, 2014.  St. Rec. Vol. 2 of 5, 5th Cir. Order, 14-KH-678, 1-/21/14.  Davis also was granted until November 23, 2014, to file a writ application in the appellate court.  St. Rec. Vol. 2 of 5, Notice of Intent, 10/23/14; Trial Court Order, 10/23/14.

[17]*State ex rel. Davis v. State*, 178 So.3d 582 (La. 2015); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2014-KH-2436, 10/2/15; La. S. Ct. Writ Application, 14-KH-2436, 11/20/14 (filed by hand delivery); St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2014-KH-2436, 11/21/14.

[18]Rec. Doc. No. 1.

Davis contends that no lab reports were introduced to support the doctor's intoxication diagnosis and to contradict the possibility that his behavior was caused by his head injury from the accident.

The State filed a response in opposition to the petition urging that the evidence was sufficient to support the guilty verdict, and the state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law.[19]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which was filed by Davis's counsel on May 9, 2016.[21]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State did not specifically address timeliness, exhaustion, or procedural default in its response to Davis's petition.  However, based on the record, none of these defenses are relevant, and Davis's petition was timely filed and no procedural bar was imposed to prevent review of this

---

[19]Rec. Doc. No. 7.

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective when they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Graves's federal habeas petition on January 20, 2016, when pauper status was granted.  Graves signed and dated the petition on January 16, 2016, which is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to a federal court.

issue.  The record also demonstrates that Davis's counsel asserted a claim on insufficient evidence on direct appeal based on the lack of support for Dr. Morse's testimony and diagnosis.  The record does not demonstrate that all of the particular legal and factual arguments now asserted by Davis were actually exhausted before the state courts.  Nevertheless, because the claim lacks merit, the Court will address it without requiring further exhaustion.  28 U.S.C. § 2254(b)(2).

## IV.   Standards for a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d

230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.      Sufficiency of the Evidence

Davis through counsel contends that the evidence at trial was insufficient to prove that he was intoxicated at the time of the accident.  In doing so, he relies on the weight of the evidence that was not presented at trial and which would have created doubt as to the evidence that was.  As noted above, Davis suggests that the evidence was insufficient where the State failed to produce evidence of the chain of custody of the pill bottle, test the pills in the bottle, establish the actual dosage and count prescribed to Davis, or produce lab reports to support the diagnosis or disprove that his behavior was caused by a head injury from the accident.  The State argues that the evidence that was presented at trial was sufficient to establish each element of the crime charged and denial of relief by the state courts' was proper under federal law.

Davis's counsel raised the sufficiency of the evidence on direct appeal to the Louisiana Fifth Circuit.  Relying on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state law, the Court resolved that the evidence was sufficient to establish that Davis was operating his vehicle while intoxicated.  This was the last reasoned opinion on the issue.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Claims of insufficient evidence present a mixed question of law and fact. *Davila v. Davis*, No. 15-70013, 2016 WL 3171870, at *3 (5th Cir. May 26, 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . .. Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La.

App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails."  *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d at 209.  The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial.").  The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*,

506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Davis was convicted with a fourth or more driving while intoxicated offense, which in his case was a sixth such offense.  In Louisiana, to support a conviction for a fourth or more driving while intoxicated charge, the State must prove the defendant was operating a vehicle, was under the influence of alcohol or drugs, and had the requisite number of prior convictions for driving while intoxicated.  La. Rev. Stat. Ann. § 14:98 (West 2012); *see State v. Johnson*, No. 2015-KA-0472, 2016 WL 3134588, at *3 (La. App. 1st Cir. Jun. 2, 2016) (citing *State v. Graves*, 675 So.2d 1141, 1145 (La. App. 1st Cir. 1996)).

In Davis's case, the parties stipulated to Davis's prior convictions and there was no dispute that Davis was driving his pickup truck during all relevant times.[22]  Davis's only challenge is to the sufficiency of the evidence to establish that he was intoxicated rather than suffering from head trauma caused by the accident.

The Louisiana Supreme Court defines intoxication "as the impairment, however slight, to the ability of a person to operate an automobile." *State v. Delanueville*, 90 So.3d 15, 20 (La. App. 5th Cir. 2012) (citing *State v. Hightower*, 238 La. 876, 885, 116 So. 2d 699, 703 (La. 1959)).  It is well settled under Louisiana law that intoxication with its attendant behavioral manifestations is an observable condition about which any witness may testify.  *State v. Delanueville*, 90 So.3d at 20; *State v. Johnson*, 2016 WL 3134588, at *3.  The sufficiency of the behavioral manifestations to support a conviction for driving while intoxicated, even without scientific tests, must be determined on a case by case basis.  *State v. Delanueville*, 90 So.3d at 21; *State v. Johnson*, 2016

---

[22]St. Rec. Vol. 3 of 5, Trial Transcript, p. 9, 1/24/13.

WL 3134588, at *3.  A police officer's subjective opinion about the intoxicated condition of a person may constitute sufficient evidence of intoxication to support a DWI conviction.  *State v. Delanueville*, 90 So.3d at 21; *State v. Graves*, 675 So.2d at 1145-46; *State v. Parry*, 985 So.2d 771, 775 (La. App. 1st Cir. 2008).  Ultimately, the Louisiana Supreme Court has decreed what it means to be intoxicated for purposes of the DWI laws:

> . . . a person is intoxicated within the provisions of the statute when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating an automobile in a manner in which an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions.

*State v. Hightower*, 238 La. at 886, 116 So.2d at 703.

In this case, the trial judge heard the testimony of the victims to the hit-and-run accident caused by Davis.  Roy Moore testified that he saw Davis approaching him from behind after he changed lanes on West Esplanade while heading into stopped traffic.[23]  Davis veered his truck at the last minute avoiding a collision with the back of Moore's car.  Davis instead drove his truck between Moore and the car in the lane next to him, sideswiping Moore's car.  Davis then swerved back into Moore's lane and collided with the back of the RAV4 stopped in the lane in front of Moore.  This caused Davis's hood to pop open and turned on the windshield wipers.[24]  Davis got out, closed the hood, and took off the driver's side windshield wiper.  He told people to get out of the way, got back in his truck, backed up and drove around the RAV4.[25]  He hit the guardrail and proceeded around the U-turn to head in the opposite direction as his car was smoking.

---

[23]St. Rec. Vol. 3 of 5, Trial Transcript, p. 37, 1/24/13.

[24]*Id*., at pp. 37-38.

[25]*Id*., at p. 38.

Martha Meyers testified that she was stopped at a red signal light at West Napoleon and Clearview when her RAV4 was struck from behind by Davis's pickup truck.[26]  She could see that the hood of his truck was up.  Soon after, Davis started to pull away in the truck and Meyers quickly wrote down the license plate number.[27]  Davis made a U-turn and began going in the opposite direction while the truck was smoking.  The information received from Moore and Meyers was recorded in a report prepared by Detective Steven Brens who testified about his report at the trial.[28]

Not long after this, Deputy Remondet saw Davis's pickup truck on West Napoleon and it was proceeding slowly in the left lane with smoke coming out from under the raised hood.[29]  The Deputy found Davis to be sluggish inside of the vehicle so he had him get out and have a seat on the curb on the canal side of the street next to where he stopped.[30]  The Deputy noticed that Davis's eyes were really bloodshot and his words were really slurred.[31]  Based on his observations, the Deputy believed Davis to be a drunk driver.[32]

Deputy Cannatella, an expert in the administration of the standard field sobriety test,[33] took over with Davis after he was stopped by Deputy Remondet.[34]  The Deputy stated that Davis's

---

[26]*Id.*, at p. 39.

[27]*Id.*, at p. 40.

[28]*Id.*, at pp. 48-60.

[29]*Id.*, at p. 43.

[30]*Id.*, at pp. 44-45.

[31]*Id.*, at p. 45.

[32]*Id.*, at p. 47.

[33]*Id.*, at p. 63.

[34]*Id.*, at pp. 64-65.

vehicle and the condition of the vehicle matched the description of the hit-and-run vehicle.[35]  Davis complained of neck, back, and stomach pains and told the officer that "an old lady ran him off the road."[36]  Deputy Cannatella noted that Davis's speech was slurred and he denied any medical conditions that would cause the slurred speech.  Davis told the deputy that he had taken one or two Xanax that day.[37]  The Deputy did not smell alcohol on his breath but he did see that Davis stumbled when he walked and almost stumbled into the other lane of traffic on his way to the ambulance.[38]  The Deputy testified that he did not administer the field sobriety test because Davis claimed to be injured.

The ambulance EMT, Antoinette Valenti, also testified that Davis's speech was very slurred, and he told her he took Xanax a couple of hours before the accident.[39]  Davis also became antsy and agitated in the ambulance and the EMT had to tighten the straps to keep him on the stretcher.

At the hospital, Deputy Cannatella tried to speak with Davis and test his sobriety, but Davis kept closing his eyes and appearing to fall asleep.[40]  He was able to read the DWI and other arrest forms and Davis signed the forms.[41]  The Deputy also retrieved a prescription bottle that Davis took out of his pocket.  It was Davis's prescription bottle for Alprazolam.  The bottle was filled that day with forty pills although the Deputy and a nurse determined that there were only 21 pills

---

[35]*Id*., at pp. 70-71.

[36]*Id*., at p. 71.

[37]*Id*., at p. 72.

[38]*Id*., at p. 73.

[39]*Id*., at pp. 102, 103.

[40]*Id*., at pp. 74-75.

[41]*Id*., at pp. 77-78.

in the bottle.[42]  Davis told the Deputy that he may have dropped some in the truck, although the Deputy did not notice any when he was near the truck.  The Deputy gave the bottle back to Davis since it was his medicine.  The Deputy testified that he had already completed the DWI arrest and paper packet before he saw the pill bottle and he did not think of the bottle as evidence.[43]

Nurse Sally Ann Malone testified that upon his arrival in the emergency room, Davis was "very lethargic" and "sort of slumped over."[44]  She recalled that his speech was very slurred and he told her that he had taken three Xanax pills earlier that day.[45]

Dr. Morse was the State's expert in emergency medicine and the physician who treated Davis at the hospital following his detention.[46]  The doctor described Davis as alert and able to answer questions.  Davis also had blurred speech and the smell of alcohol on his breath.  Davis volunteered to Dr. Morse that he had taken a "significant amount" of Xanax that day.[47]  Dr. Morse determined that Davis had some soft tissue injuries and one laceration under his right eye.  Davis also vomited while in the emergency room.  The Doctor recalled that Davis refused to have a CTscan done, so he called for bloodwork and urine tests to be done to assure that the slurred speech was attributable to what he ingested rather than a brain injury.[48]  Dr. Morse concluded from the testing that Davis was suffering from acute benzodiazepine intoxication and neck or cervical

---

[42] *Id.*, at pp. 80-81.

[43] *Id.*, at pp. 95-96.

[44] *Id.*, at p. 115.

[45] *Id.*, at p. 116.

[46] St. Rec. Vol. 3 of 5, Trial Transcript, p. 11, 1/24/13.

[47] *Id.*, at pp. 12, 24.

[48] *Id.*, at p. 13.

strain.[49]  Dr. Morse recalled that as he was leaving with the deputy, Davis asked him for a sedative and the doctor declined to give him one.[50]

        Considering the evidence in the light most favorable to the State, there was sufficient evidence, including the observations of the witnesses, medical personnel, and deputies, to support the state trial court's finding that Davis was intoxicated while he was driving his vehicle having had five prior DWI convictions to which he stipulated.  Davis admitted to taking two to three Xanax pills on the day of the accident, and could not specifically account for the 19 "missing" pills.  His erratic driving, which included swerving from lane to lane, attempting to pass between two cars that were stopped on a two lane road, was demonstrative of an impaired driver as defined under Louisiana law.  Other relevant behavior noted included his exiting his wrecked truck to close the hood and pull off the windshield wiper, ordering others at the scene to get out of his way, and driving off in his crippled truck as if nothing had happened.  He also told the deputies that he had been run off the road by an old lady, when it was he who caused the accident with his impaired driving.  Each witness he directly encountered found him to be sluggish in his actions and to have slurred speech.  This evidence was more than sufficient for a reasonable fact-finder to conclude Davis had consumed enough Xanax to render him "incapable of operating an automobile in a manner in which an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions."  *State v. Hightower*, 238 La. at 886, 116 So.2d at 703.

        The matters now urged by Davis relate to the weight of the evidence and involve matters that were not in evidence before the trial court.  *Jackson* limits this Court's review to the evidence

---

[49]*Id*., at pp. 14, 32.

[50]*Id*., at pp. 14-15.

before the trier of fact and does not allow the Court to reassess the weight and credibility of the evidence. *See Jackson*, 443 U.S. at 319 (finding that such matters are left to the factfinder). The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Jackson*. Davis is not entitled to relief on this issue.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Eric Davis's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[51]

New Orleans, Louisiana, this 5th day of October, 2016.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[51]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.